**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA**

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK ACCOUNT "▮▮▮▮▮▮" (https://www.facebook.com/▮▮▮▮) AND INSTAGRAM ACCOUNT "▮▮▮▮" (INSTAGRAM USER ID NUMBER ▮▮▮▮) THAT IS STORED AT PREMISES CONTROLLED BY META PLATFORMS, INC.** | **Case No. MJ-23-** 48-B |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, James Hardy Joiner, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.     I make this affidavit in support of an application for a search warrant for information associated with certain Facebook and Instagram accounts that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), a company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.     I am a Special Agent with the Drug Enforcement Administration ("DEA"), and have been since November 2020. I am currently assigned to the DEA Mobile Resident Office. Prior to my employment with DEA, I was employed in a law enforcement capacity in

Mississippi from 2009 until 2015. In addition to my employment with the DEA, I have received no less than 220 hours of training related to my current assignment and narcotics investigations. I have received training in the conduct of drug dealers and related investigations, including the manufacture of certain types of illegal drugs. I have participated in many such investigations as a case manager and have assisted other agents with their cases. I have experience in debriefing defendants, confidential sources of information, and witnesses and other persons having personal experience and knowledge of the acquisition, transportation and distribution of illegal controlled substances. Based on my training and experience, I know that drug-trafficking organizations ("DTOs") and drug traffickers use social media platforms, including Facebook and Instagram, to facilitate the sale and distribution of dangerous drugs.

3.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. All dates, times, amounts, and locations referenced in my affidavit are approximations.

4.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 846 (conspiracy to distribute and possess with intent to distribute controlled substances) and 841(a)(1) (distribution and possession with intent to distribute controlled substances), 18 U.S.C. § 922(o) (illegal possession of a machinegun), and 26 U.S.C. § 5861(d) (possession of an unregistered firearm), among other crimes, have been committed by **Kentarius Williams ("Williams")** and others, known and unknown. There is also probable cause to search the information described in Attachment A for

2

evidence, instrumentalities, contraband, or fruits of these crimes as further described in Attachment B.

## JURISDICTION

5.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated."

## PROBABLE CAUSE

6.      Since September, 2022, investigative agents of the DEA's Mobile Resident Office have received information regarding **Williams** and his DTO, which operates primarily in Mobile, Alabama, and distributes dangerous drugs, including but not limited to fentanyl. **Williams** primarily resides in Mobile, but operates throughout the Mobile, Prichard, and Baldwin County areas. Through the course of this investigation, investigators have interviewed cooperating defendants who have provided information about **Williams**, his coconspirators, and his drug-trafficking activities. Based on these interviews, controlled purchases of fentanyl from **Williams**, the execution of a state search warrant (described below), and information from cooperating sources, investigators believe that **Williams** is a poly-drug distributor dealing primarily in pharmaceutical drugs, both counterfeit and legitimate.

7.      On February 8, 2013, I obtained a criminal complaint, signed by U.S. Magistrate Judge Sonja F. Bivins, charging **Williams** with violating 21 U.S.C. §§ 846 and 841(a)(1). *See* Case No. MJ-23-36. For purposes of brevity, my affidavit fully incorporates the facts from the affidavit that I submitted in support of that criminal complaint.

8.      On February 13, 2023, investigative agents of the DEA's Mobile Resident Office executed an arrest warrant issued by the Southern District of Alabama in connection with the above-referenced complaint, as well as a state search warrant for **Williams's** residence located at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Mobile, Alabama 36695. Investigative agents encountered **Williams** outside his apartment and placed him under arrest without incident. A search of **Williams's** apartment yielded 19 blue pills containing suspected fentanyl, 11 white pills in the shape of Xanax, and eight white oval-shaped pills containing suspected Oxycodone. During the search of **Williams's** apartment, investigative agents seized **Williams's** cell phone and obtained his consent to search the phone. **Williams** gave investigative agents the passcode to the phone and signed a written consent-to-search form. Agents downloaded **Williams's** cell phone on-site and left the device at the apartment upon completion of the search warrant. **Williams's** phone extraction contained significant incriminating evidence regarding his drug-trafficking activities and illegal weapons possession, including text messages, photos, and messages exchanged through **Williams's** Facebook and Instagram accounts—as described more fully below.

9.      For example, on November 14, 2022, **Williams** exchanged text messages with a contact listed in his phone as "▮▮▮▮" and an assigned phone number of ▮▮▮▮▮▮▮▮. ▮▮▮▮ stated to Williams, "I don't have nothing but 20 some dollars on cash out I need some I'm sick can you bring me about one or two?....get paid Wednesday morning." **Williams** replied to ▮▮▮▮, "Ion have nun." On November 23, 2022, **Williams** stated to ▮▮▮▮, "Nun but the fentanyl roxys." ▮▮▮▮ responded to **Williams**, "What color and how much?" **Williams** replied to ▮▮▮▮, "Blue 15." Through my training and experience, I know that drug dealers refer to counterfeit Roxicodone pills containing fentanyl as "blues." These pressed fentanyl pills

typically are round and blue in color. On January 23, 2023, **Williams** again texted ████ and stated, "I still got dem blue thangs." **Williams** also stated, "Percs in," which is a reference to **Williams** having Percocet pills in his possession for sale.

10.     On November 25, 2022, **Williams** utilized his Instagram account (Instagram user ID number ████████) to send an Instagram message to user ID number ████████ with username "████." **Williams** stated to "████," "U knw sum on da fent"—a reference to fentanyl. Later, on January 6, 2023, **Williams** utilized his Instagram account (user ID number ████████) to message user ID number ████████, stating, "Rs I got rich off fent." Through my training and experience, I know that drug traffickers refer to fentanyl—both the pure powder form and pressed fentanyl pills—as "fent."

11.     On December 28, 2022, **Williams** texted a contact listed in his phone as "████████" and assigned phone number ████████ **Williams** stated to ████ "Percs n dem blue fents." Based on my training and experience, I believe this message refers to **Williams** having Percocet and pressed fentanyl pills available for sale. On February 11, 2023, two days before the above-referenced arrest and search warrant, **Williams** stated to ████, "Percs n fent in," which again refers **Williams** being in possession of Percocet pills and pressed fentanyl pills for sale. On February 11, 2023, ████ texted **Williams** and asked, "wat kinda real percs yu got?" **Williams** replied, "long ones."

12.     On January 2, 2023, **Williams** exchanged text messages with a person using phone number ████████ regarding the purchase of illegal Glock "switches," which I know based on my training and experience are machinegun-conversion devices that will convert a semiautomatic Glock pistol into a fully automatic machinegun. Possession of a Glock pistol equipped with a Glock "switch," or possession of the "switch" itself, violates federal law unless

the pistol and/or the switch is registered to the possessor in the National Firearms Registration and Transfer Record. *See* 18 U.S.C. § 922(o); 26 U.S.C. § 5861(d). In the above-referenced messages, the person using phone number ▮▮▮▮▮▮▮▮ texted **Williams** about having Glock switches for sale. **Williams** responded, "How much." The person using phone number ▮▮▮▮▮▮▮▮ responded, "150," and **Williams** replied, "Send a pic." The person using phone number ▮▮▮▮▮▮▮▮ sent **Williams** a video of suspected Glock switches, a screenshot of which I have provided below. **Williams** responded, "Bet fina let my ppl know."



13.    On January 14, 2023, a person using phone number ▮▮▮▮▮▮▮▮ texted **Williams**, "You don't know nobody who like them fent mfs"—a reference to pressed fentanyl pills. **Williams** responded, "I fw em but I got dem bitches dirt cheap." The same day, a person using phone number ▮▮▮▮▮▮▮▮ sent **Williams** the picture of suspected pressed fentanyl pills below. **Williams** responded, "Ya dem fent."



14.     In addition to the above-referenced private text and Instagram messages extracted from **Williams's** phone, investigative agents have accessed **Williams's** publicly available Facebook and Instagram pages, to which **Williams** has posted multiple photos showing himself in possession of large amounts of U.S. currency and firearms. **Williams** is a known member of the "1600 Ravens" street gang, which is a violent street gang and DTO operating in the Mobile, Alabama area. **Williams** regularly posts on Facebook and Instagram using the bird emoji along with #16 or #1600, which refers to the 1600 Ravens street gang. **Williams's** username on Instagram is "▮▮▮▮▮"—a reference to the 1600 Ravens street gang. Given the probable cause provided above, investigative agents believe that **Williams's** social media accounts at Meta, including his Facebook and Instagram accounts, will contain evidence of his illegal drug distribution and weapons possession, among other crimes. In particular, the evidence to be acquired from the execution of the requested search warrant is expected to yield valuable

information concerning **Williams's** drug-distribution efforts and to help identify coconspirators, both known and unknown.

## BACKGROUND CONCERNING FACEBOOK[1]

15.     Meta owns and operates Facebook, a free-access social networking website that can be accessed at http://www.facebook.com. Facebook users can use their accounts to share communications, news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

16.     Meta asks Facebook users to provide basic contact and personal identifying information either during the registration process or thereafter. This information may include the user's full name, birth date, gender, e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Each Facebook user is assigned a user identification number and can choose a username.

17.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account

---

[1] The information in this section is based on information published by Meta on its Facebook website, including, but not limited to, the following webpages: "Privacy Policy," available at https://www.facebook.com/privacy/policy; "Terms of Service," available at https://www.facebook.com/legal/terms; "Help Center," available at https://www.facebook.com/help; and "Information for Law Enforcement Authorities," available at https://www.facebook.com/safety/groups/law/guidelines/.

includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

18.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

19.     Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

20.     Facebook users can upload photos and videos to be posted on their Wall, included in chats, or for other purposes. Users can "tag" other users in a photo or video, and can be tagged by others. When a user is tagged in a photo or video, he or she generally receives a notification of the tag and a link to see the photo or video.

21.     Facebook users can use Facebook Messenger to communicate with other users via text, voice, video. Meta retains instant messages and certain other shared Messenger content unless deleted by the user, and also retains transactional records related to voice and video chats. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

22.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

23.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

24.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

25.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

26.     Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

27.     In addition to the applications described above, Meta provides users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user

accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

28.    Meta also retains records of which IP addresses were used by an account to log into or out of Facebook, as well as IP address used to take certain actions on the platform. For example, when a user uploads a photo, the user's IP address is retained by Meta along with a timestamp.

29.    Meta retains location information associated with Facebook users under some circumstances, such as if a user enables "Location History," "checks-in" to an event, or tags a post with a location.

30.    Social networking providers like Meta typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

31.    As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Meta, can

indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Meta logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, location information retained by Meta may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

32.    Therefore, the servers of Meta are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## BACKGROUND CONCERNING INSTAGRAM[2]

33.    Instagram is a service owned by Meta, a United States company and a provider of an electronic communications service as defined by 18 U.S.C. §§ 3127(1) and 2510. Specifically, Instagram is a free-access social networking service, accessible through its website and its mobile application, that allows subscribers to acquire and use Instagram accounts, like the target account listed in Attachment A, through which users can share messages, multimedia, and other information with other Instagram users and the general public.

34.    Meta collects basic contact and personal identifying information from users during the Instagram registration process. This information, which can later be changed by the user, may include the user's full name, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, credit card or bank account number, and other personal identifiers. Meta keeps records of changes made to this information.

35.    Meta also collects and retains information about how each user accesses and uses Instagram. This includes information about the IP addresses used to create and use an account, unique identifiers and other information about devices and web browsers used to access an account, and session times and durations.

36.    Each Instagram account is identified by a unique username chosen by the user. Users can change their usernames whenever they choose but no two users can have the same usernames at the same time. Instagram users can create multiple accounts and, if "added" to the

---

[2] The information in this section is based on information published by Meta on its Instagram website, including, but not limited to, the following webpages: "Privacy Policy," https://privacycenter.instagram.com/policy/; "Information for Law Enforcement," https://help.instagram.com/494561080557017; and "Help Center," https://help.instagram.com.

primary account, can switch between the associated accounts on a device without having to repeatedly log-in and log-out.

37.     Instagram users can also connect their Instagram and Facebook accounts to utilize certain cross-platform features, and multiple Instagram accounts can be connected to a single Facebook account. Instagram accounts can also be connected to certain third-party websites and mobile apps for similar functionality. For example, an Instagram user can "tweet" an image uploaded to Instagram to a connected Twitter account or post it to a connected Facebook account, or transfer an image from Instagram to a connected image printing service. Meta maintains records of changed Instagram usernames, associated Instagram accounts, and previous and current connections with accounts on Meta and third-party websites and mobile apps.

38.     Instagram users can "follow" other users to receive updates about their posts and to gain access that might otherwise be restricted by privacy settings (for example, users can choose whether their posts are visible to anyone or only to their followers). Users can also "block" other users from viewing their posts and searching for their account, "mute" users to avoid seeing their posts, and "restrict" users to hide certain activity and prescreen their comments. Instagram also allows users to create a "close friends list" for targeting certain communications and activities to a subset of followers.

39.     Users have several ways to search for friends and associates to follow on Instagram, such as by allowing Meta to access the contact lists on their devices to identify which contacts are Instagram users. Meta retains this contact data unless deleted by the user and periodically syncs with the user's devices to capture changes and additions. Users can similarly allow Meta to search an associated Facebook account for friends who are also Instagram users. Users can also manually search for friends or associates.

14

40.     Each Instagram user has a profile page where certain content they create and share ("posts") can be viewed either by the general public or only the user's followers, depending on privacy settings. Users can customize their profile by adding their name, a photo, a short biography ("Bio"), and a website address.

41.     One of Instagram's primary features is the ability to create, edit, share, and interact with photos and short videos. Users can upload photos or videos taken with or stored on their devices, to which they can apply filters and other visual effects, add a caption, enter the usernames of other users ("tag"), or add a location. These appear as posts on the user's profile. Users can remove posts from their profiles by deleting or archiving them. Archived posts can be reposted because, unlike deleted posts, they remain on Meta's servers.

42.     Users can interact with posts by liking them, adding or replying to comments, or sharing them within or outside of Instagram. Users receive notification when they are tagged in a post by its creator or mentioned in a comment (users can "mention" others by adding their username to a comment followed by "@"). An Instagram post created by one user may appear on the profiles or feeds of other users depending on a number of factors, including privacy settings and which users were tagged or mentioned.

43.     An Instagram "story" is similar to a post but can be viewed by other users for only 24 hours. Stories are automatically saved to the creator's "Stories Archive" and remain on Meta's servers unless manually deleted. The usernames of those who viewed a story are visible to the story's creator until 48 hours after the story was posted.

44.     Instagram allows users to broadcast live video from their profiles. Viewers can like and add comments to the video while it is live, but the video and any user interactions are

removed from Instagram upon completion unless the creator chooses to send the video to IGTV, Instagram's long-form video app.

45.     Instagram Direct, Instagram's messaging service, allows users to send private messages to select individuals or groups. These messages may include text, photos, videos, posts, videos, profiles, and other information. Participants to a group conversation can name the group and send invitations to others to join. Instagram users can send individual or group messages with "disappearing" photos or videos that can only be viewed by recipients once or twice, depending on settings. Senders can't view their disappearing messages after they are sent but do have access to each message's status, which indicates whether it was delivered, opened, or replayed, and if the recipient took a screenshot. Instagram Direct also enables users to video chat with each other directly or in groups.

46.     Instagram offers services such as Instagram Checkout and Facebook Pay for users to make purchases, donate money, and conduct other financial transactions within the Instagram platform as well as on Facebook and other associated websites and apps. Instagram collects and retains payment information, billing records, and transactional and other information when these services are utilized.

47.     Instagram has a search function which allows users to search for accounts by username, user activity by location, and user activity by hashtag. Hashtags, which are topical words or phrases preceded by a hash sign (#), can be added to posts to make them more easily searchable and can be "followed" to generate related updates from Instagram. Meta retains records of a user's search history and followed hashtags.

48.     Meta collects and retains location information relating to the use of an Instagram account, including user-entered location tags and location information used by Meta to personalize and target advertisements.

49.     Meta uses information it gathers from its platforms and other sources about the demographics, interests, actions, and connections of its users to select and personalize ads, offers, and other sponsored content. Meta maintains related records for Instagram users, including information about their perceived ad topic preferences, interactions with ads, and advertising identifiers. This data can provide insights into a user's identity and activities, and it can also reveal potential sources of additional evidence.

50.     In some cases, Instagram users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

51.     For each Instagram user, Meta collects and retains the content and other records described above, sometimes even after it is changed by the user (including usernames, phone numbers, email addresses, full names, privacy settings, email addresses, and profile bios and links).

52.     In my training and experience, evidence of who was using Instagram and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to

establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

53.     For example, the stored communications and files connected to an Instagram account may provide direct evidence of the offenses under investigation. Based on my training and experience, instant messages, voice messages, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

54.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Meta can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, messaging logs, photos, and videos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

55.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

56.    Other information connected to the use of Instagram may lead to the discovery of additional evidence. For example, associated and linked accounts, stored communications, photos, and videos may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, stored communications, contact lists, photos, and videos can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

57.    Therefore, Meta's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Instagram. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

58.    I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Meta to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

59.    Based on the foregoing, I request that the Court issue the proposed search warrant.

60.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Meta. Because the warrant will be served on Meta, who will then compile the

requested records at a time convenient to it, reasonable cause exists to permit the execution of

the requested warrant at any time in the day or night.

Respectfully submitted,

James H. Joiner
Special Agent
Drug Enforcement Administration

THE ABOVE AGENT HAS ATTESTED
TO THIS AFFIDAVIT PURSUANT TO
FED. R. CRIM. P. 4.1(b)(2)(B) THIS 23rd
DAY OF FEBRUARY 2023.

SONJA F. BIVINS
UNITED STATES MAGISTRATE JUDGE

Certified to be a true and
correct copy of the original.
Charles R. Diard, Jr.
U.S. District Court
Southern District of Alabama
By: *Shannon Davison*
        Deputy Clerk
Date: February 23, 2023

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with Facebook account "█████████

█████████" (https://www.facebook.com/█████████) and Instagram account

"█████████" (Instagram user ID number █████████) that is stored at premises owned,

maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo

Park, California. Screenshots of the above-referenced accounts are provided below.

"█████████" (https://www.facebook.com/█████████:



"█████████" (Instagram user ID number █████████):



## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each account or identifier listed in Attachment A, as further provided below:

**For "** ███████████████ **" (https://www.facebook.com/** ███████ **):**

(a)      All contact and personal identifying information, including: full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)      All activity logs for the account and all other documents showing the user's posts and other Facebook activities **from September 1, 2022, through the present;**

(c)      All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them **from September 1, 2022, through the present**, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)      All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which

the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e) All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, advertising ID, and user agent string;

(f) All other records and contents of communications and messages made or received by the user **from September 1, 2022, through the present**, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g) All "check ins" and other location information;

(h) All IP logs, including all records of the IP addresses that logged into the account;

(i) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j) All information about the Facebook pages that the account is or was a "fan" of;

(k) All past and present lists of friends created by the account;

(l) All records of Facebook searches performed by the account **from September 1, 2022, through the present**;

(m) All information about the user's access and use of Facebook Marketplace;

(n) The types of service utilized by the user;

2

(o)   The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p)   All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q)   Records of any Facebook accounts that are linked to the account by machine cookies (meaning all Facebook user IDs that logged into Facebook by the same machine as the account); and

(r)   All records pertaining to communications between Meta and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

**For "███████" (Instagram user ID number ███████):**

A.   All business records and subscriber information, in any form kept, pertaining to the account, including:

1.   Identity and contact information (past and current), including full name, e-mail addresses, physical address, date of birth, phone numbers, gender, hometown, occupation, websites, and other personal identifiers;

2.   All Instagram usernames (past and current) and the date and time each username was active, all associated Instagram and Facebook accounts (including those linked by machine cookie), and all records or other information about connections with Facebook, third-party websites, and mobile apps (whether active, expired, or removed);

3

3.  Length of service (including start date), types of services utilized, purchases, and means and sources of payment (including any credit card or bank account number) and billing records;

4.  Devices used to login to or access the account, including all device identifiers, attributes, user agent strings, and information about networks and connections, cookies, operating systems, and apps and web browsers;

5.  All advertising information, including advertising IDs, ad activity, and ad topic preferences;

6.  Internet Protocol ("IP") addresses used to create, login, and use the account, including associated dates, times, and port numbers, **from September 1, 2022, through the present**;

7.  Privacy and account settings, including change history; and

8.  Communications between Meta and any person regarding the account, including contacts with support services and records of actions taken;

B.  All content (whether created, uploaded, or shared by or with the account), records, and other information relating to videos (including live videos and videos on IGTV), images, stories and archived stories, past and current bios and profiles, posts and archived posts, captions, tags, nametags, comments, mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata, **from September 1, 2022, through the present**;

C.   All content, records, and other information relating to communications sent from or received by the account **from September 1, 2022, through the present**, including but not limited to:

    1.   The content of all communications sent from or received by the account, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content if available;

    2.   All records and other information about direct, group, and disappearing messages sent from or received by the account, including dates and times, methods, sources and destinations (including usernames and account numbers), and status (such as delivered, opened, replayed, screenshot);

    3.   All records and other information about group conversations and video chats, including dates and times, durations, invitations, and participants (including usernames, account numbers, and date and time of entry and exit); and

    4.   All associated logs and metadata;

D.   All content, records, and other information relating to all other interactions between the account and other Instagram users **from September 1, 2022, through the present**, including but not limited to:

    1.   Interactions by other Instagram users with the account or its content, including posts, comments, likes, tags, follows (including unfollows, approved and denied follow requests, and blocks and unblocks), shares, invitations, and mentions;

2.  All users the account has followed (including the close friends list), unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow, and of users who have followed, unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow the account;

3.  All contacts and related sync information; and

4.  All associated logs and metadata;

E.  All records of searches performed by the account **from September 1, 2022, through the present**; and

F.  All location information, including location history, login activity, information geotags, and related metadata **from September 1, 2022, through the present**.

Meta is hereby ordered to disclose the above information to the government within **14 days** of issuance of this warrant.

## II.     Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 21 U.S.C. §§ 846 (conspiracy to distribute and possess with intent to distribute controlled substances) and 841(a)(1) (distribution and possession with intent to distribute controlled substances), 18 U.S.C. § 922(o) (illegal possession of a machinegun), and 26 U.S.C. § 5861(d) (possession of an unregistered firearm) involving **Kentarius Williams** and any coconspirators since September 1, 2022, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a)     The sale of illegal drugs, including but not limited to counterfeit opioids such as pressed fentanyl pills and other legitimate pharmaceutical drugs, including but not limited to Percocet and Oxycodone;

(b)     Communications regarding drug trafficking, preparatory steps taken in furtherance of drug trafficking, possession of large amounts of U.S. currency, and laundering of illicit drug proceeds;

(c)     Illegal possession of weapons, including fully automatic Glock pistols equipped with Glock "switches" (*i.e.*, machinegun conversion devices), and possession of weapons in furtherance of drug trafficking;

(d)     Evidence indicating how and when the account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the account owner;

(e)     Evidence indicating the account owner's state of mind as it relates to the crimes under investigation; and

(f)     The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s)

8